No. 1410.—BANK OF WEST TENNESSEE *v.* CITIZENS' BANK OF LOUISIANA.

Contracts or transactions, the basis of which was Confederate Treasury notes, cannot be judicially enforced by the courts of this State. 19 An. 161, 164, 186, 196, 269, 288, 359, 432, 464; constitution of 1868, art. 127.

APPEAL from the Fifth District Court of New Orleans, *Leaumont,* J. *Hays, Adams & Moise,* for appellees.   *A. Pitot,* for appellant.

WYLY, J.   Plaintiff has instituted this action against the defendant to recover a large cash balance for deposits and collections by the defendant, the Citizens' Bank of Louisiana, for and on account of plaintiff, the Bank of West Tennessee, during the year 1862.

Defendant sets up in answer that the transactions between the parties were in Confederate States Treasury notes, and that on the tenth of September, 1863, the amount claimed by plaintiff was paid over to the United States Quartermaster in obedience to general orders No. 202.

On the trial in the District Court there was judgment in favor of plaintiff for $90,887 22 with eight per cent. interest thereon from tenth September, 1863, and costs.

Defendant has appealed.

In the investigation of this case the first important question presented is: Was the transaction between the plaintiff and defendant based upon Confederate Treasury notes?

Plaintiff has filed in this suit the account current of defendant, extending from seventeenth of March, 1862, to eleventh of September, 1863; plaintiff's witnesses state that this account current is correct, and that it was sent to plaintiff by the defendant under cover of a letter dated May 2, 1865, which is also filed. There are several enteries in this account of Confederate Treasury notes. We have observed a very large debit of $200,000 entered in that account on twenty-sixth May, 1862. Plaintiff's action seems to be based upon that account to recover the balance due thereon. It is true that the record discloses no positive proof that defendant was instructed to collect the drafts in Confederate States Treasury notes, but a careful examination of the record satisfies us that plaintiff knew that his transactions with defendant were on a basis of Confederate notes. This large entry of $200,000 in the account is explained by the correspondence of Mr. Rousseau, the cashier of the Citizens' Bank, with Mr. May, the cashier of the Bank of West Tennessee.

On twentieth of May, 1862, Mr. Rousseau wrote: "As you have in our hands a large amount of currency deposits, without being able to bring it back, we think it more prudent on both sides, to send you by the bearer, L. E. Simonds, Esq., *a large portion of said funds;* the balance may be sent to you in the same manner if you desire it, on which please instruct us by return of Mr. S."

On twenty-fourth of May, 1862, Mr. May, the cashier of Bank of West Tennessee, replied: "I have received your favor of twentieth, per Mr. L. E. Simonds, together with $200,000 treasury notes, placed to credit of your account. I have a good many checks out which may pass through the lines or may be held, should I not be able to take them up here. I have not charged you with any of my collections for some time; *do not send me the balance;* our paper past due you will hold, as I fear to take the risk of transmission."

By this correspondence, it appears that there could have been no misunderstanding between the parties as to what was meant by the expression of "currency deposits," because on twenty-fourth of May, 1862, the plaintiff was in possession of the letter of defendant, stating

"you have in our hands a large amount of currency deposits. We think it more prudent on both sides to send you, by Mr. Simonds, a large portion of *said funds*. Plaintiff received, without objection, from Mr. Simonds, the $200,000, Confederate States notes, knowing that they were a *"a large portion of said funds."* What does the expression in plaintiff's letter, "do not send the balance," mean? "I have received your favor of twentieth per Mr. L. E. Simonds, together with $200,000, treasury notes;" "do not send the balance." The balance evidently meant the amount of treasury notes remaining in the hands of defendant.

Why did plaintiff wish to hold the balance? Because there were checks out drawn against this currency deposit which might pass through the lines. Plaintiff had frequently sent packages of Confederate States notes, as well as drafts for collection, to defendant.

On the first of February Mr. May, the cashier of Bank of West Tennessee, wrote to Mr. Rousseau, cashier of the Citizens' Bank: "Our president, T. O. Nelson, Esq., leaves for your city to-morrow, and will be there several days. By him I send a deposit of treasury notes, $100,000. Against these deposits plaintiff drew various drafts, payable in *currency.*

When defendant became uneasy and desiring to relieve themselves from so much responsibility, they sent $200,000 in treasury notes to plaintiff and offered to send them the balance, but plaintiff instructed them to hold on to the balance to meet some checks that they had drawn against these funds which might pass the lines.

On the tenth of March, 1862, plaintiff sent to defendant for collection a check on the Union Bank for $58,416 19, payable in Confederate notes.

It appears that all the deposits and collections were kept in the same account, and from the correspondence of plaintiff we infer that monthly accounts had been rendered by defendant to them. When plaintiff sent the coupons of Confederate bonds to defendant for collection, he wrote "as this interest is payable in coin, you will so oblige me as to collect and send me the coin by express."

From a careful examination of the evidence, we are satisfied that the collections made by the defendant for the plaintiff were in Confederate notes, and that plaintiff was aware thereof, that this action is based upon transactions in Confederate Treasury notes.

Under the constitution of 1868, the courts of this State cannot entertain an action based upon transactions in Confederate Treasury notes.

We think the evidence discloses that this case is founded upon dealings in an unlawful currency, and this court has often refused to lend its aid to transactions reprobated by law.

It is therefore ordered, adjudged and decreed that the judgment of the court below be avoided and annulled; and it is now ordered that there be judgment in favor of defendant, dismissing this action at plaintiff's costs in both courts.

Rehearing refused.